June M. SANFELICE and Julie
Rountree, Plaintiffs,

v.

DOMINICK'S FINER FOODS,
INC., Defendant.

No. 94 C 0727.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 5, 1995.

Brian R. Holman, Jeffrey M. Friedman, Friedman & Holman, Chicago, Illinois, for plaintiffs.

Mark Andrew Lies, II, Cacilia Reich Masover, Kristin E. Michaels, Janet C. Hershman, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Illinois, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, Judge.

Plaintiffs June M. Sanfelice and Julie Rountree have brought this sex discrimination action against the defendant, Dominick's Finer Foods, Inc., under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, as amended. Invoking the court's supplemental jurisdiction, the plaintiffs have also asserted three state law tort claims. Defendant has moved for summary judgment on all counts. For the reasons set forth below, defendant's motion is granted in part and denied in part.

### I. FACTUAL BACKGROUND

June M. Sanfelice ("Sanfelice") has been employed by Dominick's Finer Foods, Inc. ("Dominick's") as a clerk since November 1985. She has worked at Dominick's Store

Number 74 in Norridge, Illinois since June 1989 and still works there. Julie Rountree ("Rountree"), meanwhile, worked at Dominick's, also as a clerk, from December 1989 until February 1993. During her entire employment with Dominick's, she worked at Store Number 74.

Both women allege sexual harassment at the hands of Joseph Whetter ("Whetter"). He worked at Dominick's from November 1972 until May 1993, when he was terminated. From June 1989 through May 1993, Whetter was the Co–Manager at Store Number 74.

Sanfelice complains of "continuous and constant" sexually harassing conduct until she filed her EEOC charge in May 1993. Specifically, she alleges that Whetter committed the following acts: (1) on a number of occasions, he kissed her on the neck and mouth; (2) at least ten times he grabbed her buttocks, at times in the presence of others and other times while alone; (3) on multiple occasions, he grabbed her sides and tickled her; (4) he often whispered in her ear that she "had a nice ass," "smelled good," or "looked good"; and (5) on a number of occasions, he asked her to go out socially with him (including to dinner, a summer boat cruise, and after-work employee gatherings), all of which she refused. She never welcomed his conduct and often told him to stop it. On one occasion in 1993, after telling Whetter that she was "tired of you touching me," he smiled, said "I thought you liked it," and walked out of the room in laughter. Sanfelice alleges that the conduct affected her job performance. Besides being upset at work, there were times when she could not concentrate on the customers. The manager of the deli department in which she worked took note of this. She also experienced migraine headaches when she went to work and had nightmares while at home. Her intimate relationship with her boyfriend (currently, her husband) also suffered. Finally, her doctor diagnosed her with post-traumatic stress disorder, caused by Whetter's sexual harassment.

Rountree makes similar allegations of harassing conduct by Whetter. It, too, was "continuous" while she worked at Dominick's until she finally quit her job in February 1993. Specifically, she alleges that Whetter committed the following acts: (1) on multiple occasions, he kissed her on the neck, face, and ear; (2) several times he touched, rubbed, and squeezed her buttocks; (3) he whispered in her ear a number of times that she "had a nice ass", "looked hot", "had a nice body", or "smelled good"; (4) he left her a number of notes, all of which said the same thing, "I love you Julie"; (5) on multiple occasions, he leaned and rubbed up against her; and (6) he invited her out on a date, which she rejected. She also told him to stop his conduct, but the actions continued until she left Dominick's. As a result of Whetter's conduct, she had nightmares and felt intimidated by males that she did not know, especially those in positions of power. In addition, her doctor diagnosed her with post-traumatic stress disorder, as a result of the alleged harassment.

Both Sanfelice and Rountree also allege that other Dominick's employees in a supervisory capacity to each of them had knowledge of Whetter's conduct either because they witnessed it or were made aware of it by one of the plaintiffs. Sanfelice points to four individuals that either knew or should have known about Whetter's actions. First, Sanfelice alleges that Frank Rubio, the deli manager while Sanfelice worked at Store Number 74, witnessed Whetter's harassing conduct and received a complaint about Whetter from Sanfelice. Rubio did nothing about it. Second, she alleges that Frank Lapi, also a manager of the deli department, had knowledge of Whetter's conduct. In one instance, Sanfelice came into the back room crying and said to Lapi "[Whetter] touched my ass again." Later, Lapi left two messages on the voice mail of Edwina Erlemann, a Dominick's Human Resources department representative, indicating a desire to discuss a problem at Store Number 74. Erlemann failed to respond to the messages. Sanfelice also alleges that she too attempted to contact Erlemann herself in 1993, even though she did not think she could trust Erlemann. This apparently was unsuccessful. Finally, Frank Lapi also told Charles Ragonese, Dominick's Area 4 District Manager, while

he was present in Store Number 74, that he wanted to discuss an important matter with him regarding a problem at Store Number 74. Ragonese never responded to this request.

Rountree, meanwhile, points to three Dominick's employees that witnessed Whetter's conduct. First, Rountree alleges that Mike McHugh, the Store Manager while Whetter was Co–Manager, saw Whetter once kiss Rountree while she was working in the fish department. McHugh did not investigate the incident or report it to anyone. Second, Rountree claims that Tim Cashaw, the manager of the seafood department while Rountree worked part-time in that department, witnessed Whetter grab Rountree's buttocks on different occasions. Cashew did not tell anyone about this. Finally, Rountree alleges that Mario Calabrese, the produce manager while Rountree worked in the bulk department, saw notes from Whetter to Rountree saying "I love you Julie." Rountree complained to Calabrese about Whetter's conduct but Calabrese did nothing about it.

## II. *LEGAL STANDARD*

■ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED.R.CIV.P. 56(c). When reviewing the record on summary judgment, this court must draw all reasonable inferences in the light most favorable to the nonmovant. *Anderson v. Stauffer Chemical Co.,* 965 F.2d 397, 400 (7th Cir. 1992). To avert summary judgment, however, plaintiff must do more than raise " 'some metaphysical doubt as to the material facts.' " *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted)). A dispute about a material fact is genuine only if the evidence presented is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Lib-*

*erty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## III. *DISCUSSION*

### A. *Sexual Harassment*

■ The Supreme Court in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), made clear that two types of sexual harassment may be actionable under Title VII. The first is where the sexual misconduct is "directly linked to the grant or denial of an economic *quid pro quo.*" *Id.* at 65, 106 S.Ct. at 2404–05. In their amended complaint, plaintiffs alleged that "[t]angible job benefits were conditioned on plaintiffs' acquiescence to offensive, sexually harassing conduct." Plaintiffs apparently have since abandoned the *quid pro quo* theory as they did not address it in their response to the defendant's motion. Furthermore, the court finds nothing in the record sufficient to support such a theory.

■ The second type of sexual harassment actionable under Title VII is where "the conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Id.* at 65, 106 S.Ct. at 2404–05. As the Seventh Circuit explained in *Carr v. Allison Gas Turbine Div., Gen. Motors Corp.,* 32 F.3d 1007, 1009 (7th Cir.1994), there really are only two questions in a claim based on a "hostile work environment."

The first is whether the plaintiff was, because of her sex, subjected to such hostile, intimidating or degrading behavior, verbal or nonverbal, as to affect adversely the conditions under which she worked; for Title VII is not directed against unpleasantness per se but only, so far as relates to this case, against discrimination in the conditions of employment. *Harris v. Forklift Systems, Inc., supra,* —— U.S. [——] at ——, 114 S.Ct. [367] at 371 [126 L.Ed.2d 295 (1993)]; *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The second question is whether, if so, the defendant's response or lack thereof to its employees' behavior was negligent. *Saxton v. American Telephone*

& Telegraph Co., 10 F.3d 526, 535–36 (7th Cir.1993); *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 320–21 (7th Cir.1992); *Guess v. Bethlehem Steel Corp.,* 913 F.2d 463 (7th Cir.1990). It would be unrealistic to expect management to be aware of every impropriety committed by every low-level employee. But if it knows or should have known that some of its female employees is being harassed, yet it responds ineffectually, it is culpable.

*Carr,* 32 F.3d at 1009.

■ With respect to the first question above, courts have difficulty drawing the line between what is and what is not actionable sexual harassment. The Seventh Circuit recently explained it this way:

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986); *Harris v. Forklift Systems, Inc.,* — U.S. —, —, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Carr v. Allison Gas Turbine Division,* 32 F.3d 1007, 1009–10 (7th Cir.1994). On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers. *Meritor Savings Bank v. Vinson, supra,* 477 U.S. at 61, 106 S.Ct. at 2402–03; *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 620–21 (6th Cir.1986); *Katz v. Dole,* 709 F.2d 251, 256 (4th Cir.1983).

*Baskerville v. Culligan Intern. Co.,* 50 F.3d 428, 430–31 (7th Cir.1995). Citing the *Baskerville* case, defendant argues that the alleged conduct was "innocuous," "annoying at worse," and "did not remotely constitute a hostile working environment."

In *Baskerville,* the plaintiff, a secretary, was subjected to a "handful" of vulgar comments spread over a seven month period. *Id.* at 431. The court found little in the way of actionable conduct:

> He never touched the plaintiff. He did not invite her, explicitly or by implication, to have sex with him, or to go out on a date

with him. He made no threats. He did not expose himself, or show her dirty pictures. He never said anything to her that could not be repeated on primetime television ...

*Id.* On that basis, the court entered judgment for the defendant. *Id.* at 433. Clearly, the plaintiffs' allegations in this care are not analogous. Whetter did touch the plaintiffs on numerous occasions. He kissed, grabbed, and tickled them. He even did this after they made it known to him that it was unwelcome. Consequently, drawing all reasonable inferences in the light most favorable to the plaintiffs, the court concludes that the plaintiffs have met the minimum threshold for alleging facts sufficient to support a claim.

■ That alone, however, is not enough to send this case to a jury. Plaintiffs must also show that a reasonable jury could find that defendant's response or lack thereof to Whetter's behavior was negligent. *Carr,* 32 F.3d at 1009. The court concludes that the plaintiffs have done that. Both women complained to their immediate supervisors, and nothing was done to correct their situations. Sanfelice's supervisor did attempt to contact both the store's human resources representative and the district manager but they did not respond. Sanfelice herself even tried to contact human resources but to no avail. From that, it is apparent that Dominick's cannot say it did all it reasonably could have done. In its behalf, the court does note that the defendant denies many of the plaintiffs' allegations. Nevertheless, in reviewing the motion, the court must view all reasonable inferences in the plaintiffs' favor and, after having done so, concludes that judgment as a matter of law is not appropriate at this juncture.

### B. *State Law Torts*

Defendant also moves for summary judgment with respect to the plaintiffs' state law intentional tort claims set forth in Counts II, III and IV of the amended complaint. Count II is a claim by both plaintiffs for intentional infliction of emotional distress against Dominick's. Counts III and IV are civil battery

claims by Sanfelice and Rountree, respectively, against Dominick's.

Dominick's contends that the tort claims are barred by the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1, *et seq.* The IWCA was enacted to provide financial protection to workers for accidental injuries arising out of and in the course of employment. *Meerbrey v. Marshall Field and Co., Inc.,* 139 Ill.2d 455, 151 Ill.Dec. 560, 563, 564 N.E.2d 1222, 1225 (1990). The Act imposes no-fault liability upon the employer and, in return, bars common law suits by employees against the employer. *Id.* There are exceptions, however, to the litigation bar where the employee-plaintiff proves: (1) that the injury was not accidental; (2) that the injury did not arise from his employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act. *Id.* 151 Ill.Dec. at 564, 564 N.E.2d at 1226. Defendant argues that none of the exceptions apply and thus claims that the tort actions should be barred. Plaintiffs, meanwhile, disagree with respect to the first exception.

The Illinois Supreme Court has defined "accidental" under the IWCA as "anything that happens without design or an event which is unforeseen by the person to whom it happens." *Id.* Intentional torts committed by a co-employee are accidental from both the employee and the employer's point of view. *Id.* Because they are accidental from the employer's point of view, the employer has the right to consider that the injured employee's sole remedy against the employer will be under the IWCA. *Id.* The employer, however, cannot take cover under the Act "for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer." The rationale for this is that an employer should not be allowed to assert that the injury was accidental and therefore under the exclusive provisions to the IWCA when the employer itself committed the tort. *Id.*

In response to the defendant's motion, plaintiffs argue that "Dominick's is liable for Whetter's tortious conduct as a consequence

of the fact that Dominick's had knowledge of the conduct and the fact that Whetter was the Co–Manager of the store where the conduct occurred." They also argue that, based on the Seventh Circuit's holding in *Hunter v. Allis–Chalmers Corp.,* 797 F.2d 1417 (7th Cir.1986), Whetter's deliberate acts should be attributed to Dominick's.

In this situation, the court agrees with the defendant that the plaintiffs have missed the mark. The rule of law set forth in *Meerbrey* is clear: to avoid the bar of the IWCA, plaintiffs must show either that Dominick's or its alter ego intentionally inflicted injuries upon the plaintiffs or that Dominick's commanded or expressly authorized the torts. First of all, Whetter is not the alter ego of Dominick's. The fact that a tortfeasor is a supervisor or manager does not make him the alter ego. *Jablonski v. Multack,* 63 Ill.App.3d 908, 20 Ill.Dec. 715, 718, 380 N.E.2d 924, 927 (1978). Therefore, the court must resolve whether plaintiffs make an adequate showing that Dominick's either intentionally inflicted injuries upon the plaintiffs or commanded or expressly authorized the torts. Plaintiffs have not made any showing. The fact that Whetter committed the acts within the scope of his employment is not sufficient to raise a jury question as to the defendant's liability. *Meerbrey,* 151 Ill.Dec. at 565, 564 N.E.2d at 1227 (IWCA's exclusivity provisions bar employees from bringing common law actions against their employers based solely upon the doctrine of *respondeat superior* ). Furthermore, plaintiffs make no allegation that Dominick's gave out a command or an express authorization to have Whetter sexually harass the plaintiffs. What Dominick's may ultimately be found liable for is that it was negligent but that's something different altogether. Therefore, because plaintiff's common law tort claims are barred by the IWCA, defendant's motion for summary judgment with respect to Counts II, III, and IV is granted.

## CONCLUSION

Defendant's motion for summary judgment on Count I of plaintiffs' First Amended Complaint is denied. Defendant's motion for

summary judgment on Counts II, III, and IV is granted. Counts II, III, and IV are dismissed with prejudice.