**Marcia M. FULLER, Plaintiff,**

v.

**CATERPILLAR INC., Defendant.**

**No. 99 C 7334.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 4, 2000.

Claudia Oney, Claudia Oney & Associates, Chicago, IL, for Marcia M. Fuller.

Michael A. Warner, Marcia A. Mahoney, Laura Anne Lindner, Seyfarth Shaw, Chicago, IL, Jona Gabrielle Gaffke, Peopria, IL, for Caterpillar Inc.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Marcia M. Fuller brought this action against her employer, Caterpillar Inc., alleging that Caterpillar is liable for sexual harassment committed by some of her co-workers. Caterpillar has brought a motion for summary judgment, which we grant for the reasons stated below.

### RELEVANT FACTS [1]

In 1994 and 1995, during a strike between Caterpillar and the United Automobile Workers Union ("UAW"), Fuller worked as a temporary employee at Caterpillar's Aurora facility, which manufactures tractors and other earth-moving equipment. Her temporary employment ended when the strike ended. On July 28, 1998, Fuller was hired as an assembler at Caterpillar's Aurora facility. On August 3, Fuller began working in the factory, in Building H on line 966. Fuller's immediate supervisor was Brent Finley, who report-

1. The following facts are either not in dispute (*i.e.* admitted by Fuller) or disputed by Fuller (1) without proper support; and/ or (2) disput- ed only as to the relevance and materiality of the facts, except where otherwise indicated.

to Superintendent Jerry Elliott, who, in turn, reported to Factory Manager Chuck Elwyn.

On August 11, Bob Ribolzi, Chairman of the UAW's Bargaining Committee, informed Elwyn that Steve Brazzale, Fuller's fiancé, had called him to tell him that Fuller was being sexually harassed at the factory but had not identified the alleged harassers. Later that same morning, Elwyn spoke to Fuller in his office, with his secretary, Cindy Stejskal, present to take notes. At that meeting, Fuller told Elwyn that her co-workers were making vulgar comments and rude sexual gestures at her. Specifically, Fuller described an incident in which a co-worker, holding a hot dog by his crotch and waving it at her, said "Want some of my wienie, I'll share it with you. It's big enough." (R. 46, Pl.'s Resps. to Def.'s 56.1 Statement of Facts at ¶ 55.) In addition, Fuller told Elwyn that she heard sexual comments all day long—"that it was like walking through a gauntlet." (Id.) Some examples she gave to Elwyn of these comments were: "With an ass like that you'll be in management in no time," "nice ass," "yum-yum," and "oh baby." (Id.) Although she would not identify any of her harassers, she told Elwyn that she wanted the harassment to stop.

Elwyn offered Fuller two alternatives: (1) file a complaint; or (2) walk out with him through the workplace. She declined both options at that time because she was afraid of her complaint getting back to the alleged harassers. She did, however, express that "she wanted Caterpillar, at the very least, to have a meeting or to send memos out to let the harassers know their conduct would not be tolerated." (Id.) Elwyn then asked Fuller if she would be more comfortable speaking with the UAW leadership, and she agreed to meet with UAW Committeeman John Bakel and UAW Civil Rights Committee Chairperson Pete Moore. Elwyn concluded the meeting by asking Fuller to contact him if she

experienced any further incidents of sexual harassment and told her he would personally take action to ensure that it stopped.[2] (R. 27, Def.'s 56.1 Statement of Facts at ¶ 59 (citing Def.'s 56.1 Exs., Ex. 16, Stejskal Notes of August 11, 1998 Meeting).) On or about the same day, Elwyn notified Elliott, the superintendent in Fuller's work area, that Fuller had complained of sexual harassment. Elwyn instructed Elliott to "keep his eyes open." (R. 46, Pl.'s Resps. to Def.'s 56.1 Statement of Facts at ¶ 62.)

The next morning, August 12, Bakel and Moore met with Fuller, and Fuller told them that she was being sexually harassed. She stressed to Bakel and Moore that the sexual comments her co-workers made to her all day long were "unbearable, degrading and sexually vulgar." (Id. at ¶ 63.) In addition, she told them about a note placed on her car that read "Nice Ass You're Gonna Get Fucked." (Id.) She also told them that her co-workers stared and whistled at her, and subjected her to unwanted hugging. However, even though Moore explained to Fuller that the UAW could not help resolve her complaint unless she identified her harassers, Fuller again refused to identify any of the alleged harassers because she was afraid. Bakel and Moore recounted their conversation with Fuller to Elwyn the same day.

Because they did not know the names of the alleged harassers, Elwyn, Bakel and Moore decided that Bakel and Moore would walk the factory floor and talk to the union stewards in order to try to identify Fuller's harassers. Caterpillar asserts that, during this walk-thru, "Bakel and Moore never received any information from the union stewards or other employees relating to Plaintiff's sexual harassment complaint." (R. 27, Def.'s 56.1 Statement of Facts at ¶ 70.) Fuller flatly denies this, but does not provide an explanation or evidence of what information, if any, Bakel and Moore collected. In addition, Bakel and Moore canvassed the floor

---

**2.** Fuller, without any supporting evidence, denies that Elwyn asked her to report any further harassment or assured her that he would take action to stop the harassment.

and talked to Fuller's co-workers. They told the employees that a sexual harassment complaint had been made and reminded them of the company's policy against such conduct. Fuller admits that Bakel and Moore walked around "saying, 'Leave her alone,'" but points out that no Caterpillar officials participated in this walk-thru. (R. 46, Pl.'s Resps. to Def.'s 56.1 Statement of Facts at ¶ 68.)

Around the same time, Finley, Fuller's direct supervisor, told her that he had been informed of her complaint and understood that she did not want to identify the alleged harassers. When Finley asked whether Fuller's harassers were on line 966, she responded that "some of the men on line 966 were engaging in sexual harassment." (*Id.* at ¶ 80.) Finley then moved Fuller to the work zone just outside and in full view of his office. Fuller alleges, without support, that the move was designed to "torture her and punish her." (*Id.* at ¶ 71.)

Fuller had to miss work on August 10, 12, and 13 because she was involved in two car accidents. After she returned to work, she did not have any further conversations with anyone in Caterpillar management or the UAW about the alleged harassment.

On August 14, Elwyn consulted with Labor Relations Manager Jack Futterer. He told Futterer the substance of Fuller's complaints, as relayed to him by Bakel and Moore, and told Futterer of their efforts to learn the identities of the harassers and to stop any harassment. Futterer told Elwyn that he had acted appropriately given the information Fuller provided.

On August 28, Fuller stopped reporting to work. Steve Brazzale, whom Fuller married on August 13, called and told Caterpillar that she left because of the harassment. On January 19, 1999, Fuller filed a charge of discrimination with the Illinois Department of Human Rights. In that charge, for the first time, Fuller identified the alleged harassers as "Harley (last name unknown) and Erwin (last name unknown)." (R. 27, Def.'s 56.1 Statement of Facts at ¶ 80.) When the Aurora facility received Fuller's charge, Futterer directed Labor Relations Representative Bill Miller to investigate the allegations. Miller interviewed Bakel, Moore, and Finley and identified the two individuals named in the charge as Erwin Sohm and Harley Hitchcock. He interviewed Sohm and Hitchcock, who denied Fuller's allegations, and, at the conclusion of the interviews, Miller "reaffirmed Caterpillar's policy against sexual harassment and informed them that any harassment would result in discipline, up to and including discharge." (*Id.* at ¶ 85.)

On November 10, 1999, Fuller filed suit in this Court.

## ANALYSIS

### I. Standard of Review

Summary judgment is proper only when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment carries the initial burden of showing that no such issue of material fact exists. Pursuant to Rule 56(b), when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Id.* at 250, 106 S.Ct. 2505.

In making our determination, we are to draw inferences from the record in the light most favorable to the non-moving party. We are not required to draw every conceivable inference, but only those that are reasonable. *See Resolution Trust Corp. v. Juergens*, 965 F.2d 149, 151 (7th

Cir.1992) (citations omitted). The mere denial of a particular fact without specific references to affidavits, parts of the record, and other supporting materials is insufficient, and, where a properly supported factual assertion is met with such a naked denial, the fact may be deemed admitted. *See Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir.1994). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (the nonmovant must go beyond the pleadings and support her contentions with proper documentary evidence). Thus, if the evidence is merely colorable, is not sufficiently probative, or merely raises some metaphysical doubt as to the material facts, the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

## II. Sexual Harassment

Under Title VII, it is "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Conduct is characterized as sexual harassment in violation of Title VII when: (1) it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" from the perspective of a reasonable person; and (2) when it results in the victim subjectively perceiving the work environment to be abusive or hostile. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ("to be ac-

tionable under [Title VII], a sexually objectionable environment must be both objectively and subjectively offensive"). The focus is on the totality of the circumstances. *Faragher,* 524 U.S. at 787, 118 S.Ct. 2275; *Saxton v. American Tel. & Tel.,* 10 F.3d 526, 534 (7th Cir.1993). Factors relevant to determining whether a particular environment is hostile include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367 (quoted in *Faragher,* 524 U.S. at 787–88, 118 S.Ct. 2275); *Wilson v. Chrysler Corp.,* 172 F.3d 500, 510 (7th Cir.1999).

### A. Hostile Environment [3]

In this case, the record readily supports the inference that Fuller perceived her work environment as hostile as a result of the alleged harassment. For example, when co-workers made obscene gestures at her, she avoided looking at them and said "please stop it." (R. 42, Pl.'s Resp. at 2.) In addition, she explicitly told Elwyn that she felt she was being sexually harassed. Later, in her conversation with Bakel and Moore, Fuller described the sexual comments made to her by her co-workers as "unbearable, degrading, and sexually vulgar." (R. 46, Pl.'s Resps. to Def.'s 56.1 Statement of Facts at ¶ 63.)

Whether Fuller's work environment objectively could be described as hostile is a closer question. Fuller was a victim of the alleged sexual harassment for, at most, twenty-two days.[4] Fuller alleges that numerous co-workers were involved on a daily basis in creating a hostile environment

---

**3.** In her amended complaint, Fuller alleged *quid pro quo* sexual harassment. Fuller apparently has abandoned the *quid pro quo* theory as she did not address it in her response to Caterpillar's motion for summary judgment. In any case, because we have found nothing in the record sufficient to support such a theory, we grant summary judgment to Caterpillar on Fuller's *quid pro quo* sexual

harassment claim. *See Sanfelice v. Dominick's Finer Foods,* 899 F.Supp. 372, 375 (N.D.Ill.1995).

**4.** Fuller's first day in the factory was August 3, 1998. Her last was August 28. She missed work on August 10, 12, and 13.

at work. In support of her allegations, however, she cites almost exclusively to her own deposition. *See Hines v. The Sherwin–Williams Co.*, No. 96 C 4889, 1999 WL 1267697, at *6 (N.D.Ill. Mar. 31, 1999) ("self-serving uncorroborated assertions are not evidence of a hostile work environment") (citing *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 843 (7th Cir.1996)). In this case, however, we need not decide whether, objectively, Fuller's work environment was hostile because, even if Fuller had properly supported her allegations of a hostile environment, she has not shown sufficient facts to hold Caterpillar liable.

## B. Caterpillar's Liability

■ Caterpillar argues that it should not be held liable for the alleged misconduct of its employees because it responded reasonably to Fuller's allegations. Case law makes clear that an employer should be held liable for "a co-employee's harassment only [if it had] 'been negligent either in discovering or remedying the harassment.' " [5] *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir.1998) (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997)). Consequently, "[a]n employer's legal duty in co-employee harassment cases [is] discharged if it takes 'reasonable steps to discover and rectify acts of sexual harassment of its employees.' " *Id.* Precisely what action is reasonable depends on the seriousness of the alleged harassment. *Smith v. Sheahan*, 189 F.3d 529, 535 (7th Cir.1999). While a plaintiff does not "have a legal duty to cooperate with the employer's investigation[,] . . . the rea-

sonableness of the employer's attempts to rectify harassment is measured against how much it knows or should have known." *Perry*, 126 F.3d at 1014–15. In general, an employer fails to act reasonably when it unduly delays taking remedial action, or when the action it does take is not reasonably likely to prevent continued harassment. In making this assessment, we should not focus "solely upon whether the remedial activity ultimately succeeded, but instead should determine whether the employer's total response was reasonable under the circumstances as then existed." *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 480 (7th Cir.1996).

■ In order to determine whether Caterpillar is liable for its employees' alleged misconduct, we must first decide whether Caterpillar knew or should have known about its employees' acts. In this case, Caterpillar had had a sexual harassment policy for at least the past ten years. According to this policy, "[a]ll employees of Caterpillar Inc. are entitled to a workplace that is free from sexual harassment." (R. 26, Def.'s Mot. for Summ. J. at 2 (citing Def.'s Facts Ex.1, Caterpillar's Sexual Harassment Policy Statement).) The policy further indicates that an employee who feels he or she is the victim of sexual harassment should report it to either (1) his or her supervisor; (2) the department manager; (3) Personnel Services Manager, Bill Arbogast; or (4) the corporate EEO Coordinator. (R. 27, Def.'s 56.1 Statement of Facts at ¶ 14.) Fuller admits that she was aware of Caterpillar's sexual harassment policies. (R. 46, Pl.'s Resps. to Def.'s 56.1 Statement of Facts at ¶ 12.)

---

**5.** We focus solely on co-worker harassment even though at her deposition, for the first time, Fuller claimed she was harassed by Finley, her supervisor. Fuller clarified in her response brief that she "is claiming sexual harassment by coworkers." (R. 42, Pl.'s Resp. at 1.) Even if we were to consider a claim of supervisor harassment, Caterpillar would be entitled to summary judgment based on its *Faragher/ Ellerth* affirmative defense because it (1) "exercised reasonable care to

prevent and correct promptly any sexually harassing behavior"; and (2) "[Fuller] unreasonably failed to take advantage of the preventive or corrective opportunities provided by [Caterpillar] or to avoid harm otherwise." *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (cited in *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 810–11 (7th Cir.1999)).

In this case, Elwyn found out about the allegations of harassment on August 11.[6] He immediately interviewed Fuller to find out the details of her allegations. Although Fuller provided some information, she did not reveal any of the harassers' identities. Elwyn asked Fuller to contact him if she was harassed again and assured her that he would take action to stop the harassment.

The next day, upon Elwyn's suggestion, Fuller spoke to union leaders, Bakel and Moore, about the harassment. Again, she refused to identify her harassers. Therefore, Bakel and Moore were limited to walking the factory floor, telling Fuller's co-workers to leave her alone and reminding them of the company's policy against sexual harassment.[7] Bakel and Moore did not receive any additional information about Fuller's complaint during the walk-thru.

Furthermore, around the same time, Fuller's direct supervisor, Finley, told her that he had been informed of her complaint and moved her to a work zone just outside and in full view of his office. Although, at times, Fuller seems to claim that Finley, in fact, also was one of her harassers and that this move was designed to punish and torture her, in her response to Caterpillar's motion for summary judgment, she clarifies that she is alleging harassment by co-workers only. Finley also walked the floor and told people about the sexual harassment policy, a fact cor-

roborated by the declaration of one of the employees who worked on line 966 with Fuller. (R. 46, Pl.'s Resps. to Def.'s 56.1 Statement of Facts at ¶ 71 (citing Rodriguez Decl. at ¶ 3).) Fuller denies that Finley talked to her co-workers about sexual harassment, but her bare denial is insufficient to defeat summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. We find that, because Caterpillar's actions in addressing Fuller's complaints were prompt and reasonably likely to prevent future harassment, Caterpillar cannot be held liable for its employees' alleged misdeeds. *Schrean v. Chicago Transit Auth.*, No. 97 CV 3455, 1999 WL 977068, at *5 (N.D.Ill. Oct. 22, 1999) (citing *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 432 (7th Cir.1995)).

We also find that Fuller has not presented sufficient evidence that Caterpillar should have known of any alleged continuing harassment or that she notified Caterpillar of her co-workers' continuing misconduct after Caterpillar took remedial actions. She admits that she had no further conversations with Caterpillar management or anyone in the UAW about harassment after the day she talked to Bakel and Moore, *i.e.* August 12.

Fuller attempts to justify her failure to identify her harassers as well as her silence regarding any continuing harassment by claiming that she feared the harassers and her supervisor, Finley. Fear, howev-

---

**6.** Fuller claims that Caterpillar had knowledge of her harassment prior to August 11 because she reported the harassment to Senior Manufacturing Specialist Gary Reyes several days prior to her conversation with Elwyn. Fuller, however, admits that "Reyes was a friend of [hers] who, in his 'staff position,' had no supervisory authority over Plaintiff or any other employees." (R. 46, Pl.'s Resps. to Def.'s 56.1 Statement of Facts at ¶ 86.) In any case, Elwyn found out about the harassment and began an investigation by August 11. Even if we were to impute Reyes' knowledge of the harassment to Caterpillar, at most Caterpillar's failure to act lasted eight days (she began working in the factory on August 3 and Elwyn began his investigation on August 11). Such a short delay is not

sufficient to hold the employer liable. *See Hines*, 1999 WL 1267697, at *6 ("The Seventh Circuit generally grants an employer ten days to investigate and take action if necessary, in accordance with the EEOC's policy.") (citing *Zimmerman v. Cook County Sheriff's Dept.*, 96 F.3d 1017, 1019 (7th Cir.1996)).

**7.** Fuller argues that the union's efforts, at Caterpillar's request, of investigating her harassment claims are irrelevant and should not be considered in determining Caterpillar's liability. She does not, however, cite any legal authority for this proposition, and our own independent research has not revealed any.

er, does not excuse Fuller's duty to report. *Shaw,* 180 F.3d at 813 ("employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty ... to alert the employer to the allegedly hostile environment"); *see also Zimmerman,* 96 F.3d at 1019 (even where a plaintiff refuses to name the harasser out of fear, the defendant employer is not automatically liable if the plaintiff's report was insufficient to create a duty to investigate and, if required, take remedial action).

We pause to discuss Fuller's descriptions of numerous other Caterpillar employees who allegedly endured sexual harassment before, during, and after Fuller's tenure at Caterpillar. Her reliance on these other employees' experiences does not change the outcome in this case. Although Fuller relies on the harassment of other employees to show that Caterpillar should have known of her harassment, as Caterpillar rightly points out, Fuller does not allege that any of those harassers were the same ones who harassed her. Moreover, many of the incidents happened well before the incidents giving rise to the present case occurred. Thus, these instances of harassment, unrelated to Fuller's experiences, cannot serve as constructive notice to Caterpillar of Fuller's harassment. Even if we were to assume that Caterpillar had constructive notice of Fuller's hostile environment, the undisputed evidence shows that Caterpillar's investigation into the allegations and its remedial response were timely and reasonable. Thus, we cannot hold Caterpillar liable for the actions of its employees.

■ Fuller argues that Caterpillar's response to her allegations of sexual harassment were insufficient and suggests that other courses of action would have been more effective. Case law, however, makes clear that "a Title VII defendant is not required to take the most effective action possible to avoid liability." *Zupan v. State,* No. 95 C 1302, 1999 WL 281344, at *5 (N.D.Ill. Mar. 30, 1999). Instead where

the defendant's remedial response is "both timely and reasonably likely to prevent the conduct underlying the complaint from recurring ... nothing more is required." *Id.* (citing *Parkins,* 163 F.3d at 1036). "[T]he law does not even require that the employer's actions prevent harassment, but merely that its response was reasonably likely to prevent future harassment." *Parkins,* 163 F.3d at 1036. Although we note our strong disapproval of the type of workplace behavior Fuller alleges took place in this case, we cannot hold Caterpillar liable for it. "Such a penalty would, in essence, impose a form of strict liability on [Caterpillar]." *Hines,* 1999 WL 1267697, at *8. In this case, because Caterpillar acted promptly and reasonably in response to Fuller's allegations of sexual harassment, we grant summary judgment to Caterpillar on Fuller's hostile environment sexual harassment claim.

### III. Punitive Damages

■ Punitive damages awards are available in Title VII cases, but are limited to those instances in which the employer has engaged in intentional discrimination with "malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 119 S.Ct. 2118, 2121, 144 L.Ed.2d 494 (1999). Because Title VII was designed to "encourage the creation of antiharassment policies and effective grievance mechanisms," punitive damages may not be awarded where the employer has made "good faith efforts to comply with Title VII." *Id.* at 2129 (citation omitted). The Tenth Circuit has explained that "the extent to which an employer has adopted antidiscrimination policies and educated its employees about the requirements of [Title VII] is important in deciding whether [the employer] is insulated from vicarious punitive liability." *EEOC v. Wal–Mart Stores, Inc.,* 187 F.3d 1241, 1248 (10th Cir.1999). *See also Hull v. APCOA/Standard Parking Corp.,*

No. 99 C 2832, 2000 WL 198881, at *14 (N.D.Ill. Feb. 14, 2000) ("employer's good faith can be established by the dissemination of a written non-discrimination and anti-harassment policy with an effective reporting mechanism").

 In this case, Caterpillar's good faith efforts to adhere to Title VII insulate it from being liable for punitive damages. Caterpillar has had a policy against sexual harassment for at least the past ten years. The policy is posted in glass display cases at the building entrances. In 1996, Caterpillar published two booklets for employees, providing guidance on, *inter alia*, how to recognize sexual harassment, how to report it, and an explanation of the consequences of harassment. In November and December of 1996, all employees, supervisory and non-supervisory, were required to attend training regarding sexual harassment. Furthermore, in January 1998, all salaried/management employees were required to attend an eight-hour diversity training course, which, in substantial part, was devoted to sexual harassment. Fuller, herself, admits that she was aware of Caterpillar's sexual harassment policies. (R. 46, Pl.'s Resps. to Def.'s 56.1 Statement of Facts at ¶ 12.)

Furthermore, Caterpillar promptly took reasonable steps to rectify the alleged harassment once Fuller reported it. Bakel and Moore walked the floor to talk to the employees about sexual harassment and Finley talked specifically to the co-workers in Fuller's immediate work area. In addition, Finley moved Fuller to a different work area, presumably in an effort to stop the harassment of her co-workers. These good faith efforts shield Caterpillar from liability for punitive damages. Accordingly, summary judgment is granted to Caterpillar on Fuller's claim for punitive damages.

### CONCLUSION

No person should have to endure the harassing activities Fuller allegedly faced. However, the issue for the Court is whether Fuller has shown sufficient questions of material fact to support holding Caterpillar liable at trial for the reprehensible actions of its employees. We conclude that the undisputed facts require us to answer this question in the negative. Therefore, we must grant the defendant's motion for summary judgment. (R. 26–1.) We instruct the Clerk of Court to enter judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of Caterpillar and against Fuller.